**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 14-20854-CR-MARTINEZ
Case No. 14-20025-CR-MARTINEZ

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

GILBERT FIORENTINO and
CARL FIORENTINO,

        Defendants.

_____/

**SYSTEMAX, INC. AND TIGERDIRECT, INC.'S**
**SUPPLEMENTAL MEMORANDUM OF LAW**
**IN SUPPORT OF RESTITUTION AWARD**

Systemax Inc. and TigerDirect, Inc. (collectively, "Systemax"), by counsel, hereby submit this Supplemental Memorandum of Law in connection with the award of restitution to Systemax as the victim of the crimes to which Gilbert Fiorentino and Carl Fiorentino have recently pled guilty and been sentenced. This memorandum is being provided as a supplement to the Memorandum of Law filed on April 22, 2015 [No. 14-20854, ECF No. 38] [No. 14-20025, ECF No. 90], and the evidence and argument presented during the consolidated April 29, 2015 restitution hearing in *United States v. Gilbert Fiorentino*, Case No. 14-20854-CR-MARTINEZ, and *United States v. Carl Fiorentino*, Case No. 14-20025-CR-MARTINEZ.

**INTRODUCTION**

As set forth in detail in the Plea Agreements of Gilbert Fiorentino [No. 14-20854, ECF No. 17] and Carl Fiorentino [No. 14-20025, ECF No. 66], Defendants engaged in a nearly decade-long scheme while employed as executives at Systemax, pursuant to which they accepted illegal kickbacks from multiple parties and committed fraud to hide their illegal income, all to

{32823831;1}

Systemax's detriment.  Following a consolidated Sentencing Hearing on March 3, 2015, judgments were entered against both Defendants, including terms of imprisonment, monetary penalties, forfeiture, and restitution in an amount to be determined at a subsequent hearing.  [No. 14-20854, ECF No. 35] [No. 14-20025, ECF No. 84].

The Honorable Judge Jose E. Martinez held a restitution hearing on April 29, 2015. Judge Martinez heard argument and evidence on the harm caused to Systemax as a result of several of the Fiorentinos' illegal kickback schemes.  While those matters have been taken under advisement, Judge Martinez referred to United States Magistrate Judge Jonathan Goodman Systemax's remaining requests for (i) restitution for fees and costs, (ii) clawback of a percentage of the Fiorentinos' compensation, and (iii) an award of prejudgment interest.  [No. 14-20854, ECF No. 43] [No. 14-20025, ECF No. 92].  Magistrate Judge Goodman subsequently recused himself, and the matter was reassigned to Magistrate Judge Chris M. McAliley.  [No. 14-20854, ECF No. 46] [No. 14-20025, ECF No. 97].

Systemax has worked extensively with its criminal restitution expert, Catherine Goodwin, author of Federal Criminal Restitution (West 2014), and its forensic accountants at Berkowitz Pollack Brant, to reasonably and conservatively calculate its restitutable losses.  Following a meet-and-confer conference between the parties and Systemax, an agreement was reached as to two of the three categories: (i) fees and costs, which shall be restitutable against Gilbert Fiorentino and Carl Fiorentino, jointly and severally, in the amount of $3,060,800; and (ii) prejudgment interest, which the parties and Systemax agree shall be applicable to any restitutable category of loss and shall be determined in accordance with the formula set forth below.  This memorandum also sets forth the basis for Systemax's remaining request for clawback of

compensation, whereby Systemax seeks an award of restitution against Gilbert Fiorentino in the amount of $8,215,500 and against Carl Fiorentino in the amount of $2,765,500.

## I.   LEGAL STANDARD

The Mandatory Victims Restitution Act requires an award of restitution to an identifiable victim that has suffered a pecuniary loss.  *See* 18 U.S.C. § 3663A(c)(1)(B); *U.S. v. Valladares*, 544 F.3d 1257, 1269 (11th Cir. 2008).  *See also* Gilbert Fiorentino Plea Agreement at ¶ 4 [No. 14-20854, ECF No. 17] ("The defendant agrees that he will make restitution in an amount determined by the Court."); Carl Fiorentino Plea Agreement at ¶ 4 [No. 14-20025, ECF No. 66] (same).  In the case of an offense "resulting in damage to or loss or destruction of property of a victim of the offense," the defendant must return the property or, if that is not possible, pay the greater of the value of the property on the date of the loss, or on the date of sentencing, minus the value of any part of the property that is returned to the victim.  18 U.S.C. § 3663A(b).  The award should include "the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the Defendant."  *See U.S. v. Scott*, 335 F. App'x 891, 894 (11th Cir. 2009); 18 U.S.C. 3664(e), (f)(1)(A).  Although full restitution to Systemax is not conditioned on Defendants' ability to pay or their available assets, Systemax has information to show that Gilbert Fiorentino has substantial assets that can be used to satisfy a restitution award, some of which may be have been inappropriately transferred on or after the date on which he became aware of the whistleblower letters, the Company's internal investigation, the investigation and subsequent charges filed by the United States Attorneys' Office, and the impending entry of a personal judgment against him.  In addition, it is noteworthy that Gilbert Fiorentino, who was also a lawyer and professor of business ethics at the University of Miami, should have foreseen that his wrongdoing and the resulting losses to

Systemax would lead to criminal consequences and, more particularly, an award of restitution to his victims, including the return of a portion of his compensation as restitution.

In awarding restitution to a crime victim, the court must "resolv[e] uncertainties with a view toward achieving fairness to the victim." *U.S. v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010). Exactitude in the amount of the award is not required. A victim need only present a "reasonable estimate" of the loss based on the factual evidence presented. *See U.S. v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014) (citing *U.S. v. Futrell*, 209 F.3d 1286, 1290 (11th Cir. 2000)).  The standard of proof is the more liberal preponderance of the evidence standard.  *See Futrell*, 209 F.3d at 1290.  Moreover, "[t]he district court, in determining the appropriate amount of restitution, may consider hearsay evidence that bears 'minimal indicia of reliability' so long as the defendant is given the opportunity to refute that evidence."  *U.S. v. Rodriguez*, 751 F.3d 1244 (11th Cir. 2014) (citing *U.S. v. Hairston*, 888 F.2d 1349, 1353 (11th Cir. 1989) (approving the use of a letter written by the attorney for the victim bank at the restitution hearing as evidence of the bank's loss).

While Systemax is not aware of any particular category of restitution in this Memorandum which the Government opposes, in any such instance, the law is clear that restitution must be ordered where the victim suffers a recoverable loss.  Consent of the Government is not required, and the victim is free to present evidence to the Court to support its request for restitution and to meet its preponderance of the evidence burden.  *See* 18 U.S.C. § 3771 ("Crime Victims' Rights Act") at (a)(1) (victim has the right to full and timely restitution as provided in law), (d)(1) ("The crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described in subsection (a)."); *see also* Gilbert Fiorentino Plea Agreement at ¶ 4 [No. 14-20854, ECF No. 17] ("The defendant understands and

agrees that the government and any victim may provide evidence to the Court for the purpose of a determination as to restitution." (emphasis added)); Carl Fiorentino Plea Agreement at ¶ 4 [No. 14-20025, ECF No. 66] (same).

## II.    THE COURT SHOULD AWARD RESTITUTION FOR FEES AND COSTS INCURRED BY SYSTEMAX AS A RESULT OF THE GOVERNMENT'S INVESTIGATION AND PROSECUTION

### A.    The Parties and Systemax Agree That Systemax is Entitled to an Award of Fees and Costs in the Amount of $3,060,800.

The parties and Systemax have stipulated that Systemax is entitled to restitution for its legal expenses and costs incurred as a result of Systemax's internal investigation and its participation in the Government's investigation and prosecution of the Defendants in the amount of $3,060,800.  *See* Notice of Status of Restitution Hearing ("Status Report") [No. 14-20854, ECF No. 53] at 4, [No. 14-20025, ECF No. 102] at 4.  The agreement to reimburse Systemax for its significant efforts in uncovering Defendants' crimes and assisting the Government is consistent with the law governing restitution and the circumstances in this case.

The Court is required to "reimburse the victim for . . .  necessary . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  18 U.S.C. § 3663A(b)(4); *U.S. v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014); *see also* 18 U.S.C. § 3663(A)(b)(1) (requiring reimbursement also for direct property damage/loss to the victim resulting from the offense, such as the costs Systemax incurred to initially detect the offense in response to receipt of the whistleblower letter).  Those recoverable expenses include the victim's legal fees incurred in the detection, investigation, and prosecution of the crime.  *See U.S. v. Bahel*, 662 F.3d 610, 648 (2d Cir. 2011) (awarding restitution for victim's in-house counsel and outside law firm fees); *U.S. v. Amato*, 540 F.3d 153, 159-160 (2d Cir. 2008) (affirming restitution for attorneys' fees and accounting costs incurred as

a result of corporation's participation in the investigation and prosecution of the defendant's offenses pursuant to 18 U.S.C. § 3663(A)(b)(4)); *U.S. v. Scott*, 405 F.3d 615, 619-20 (7th Cir. 2005) (affirming restitution award of auditing expenses to a bank who was defrauded by its employee as a property loss pursuant to 18 U.S.C. § 3663(A)(b)(1)); *U.S. v. Skowron*, 839 F. Supp. 2d 740, 747-49, 752 (S.D.N.Y. 2012) (awarding victim the full requested amount of $3.8 million in legal fees and related costs for interacting with the SEC and DOJ during their investigations, launching an internal investigation, and representing the defendant during the time period that he initially maintained his innocence, pursuant to 18 U.S.C. § 3663(A)(b)(4)).

During the April 29, 2015, restitution hearing, the Government attested to the significant resources that Systemax expended in order to assist the Government in uncovering the Fiorentinos' misconduct and to aide in their prosecution:

> I would like to say, Your Honor for the record, and I said this at the sentencing hearing, but Systemax was harmed by this conduct. And upon learning of the conduct in 2011, Systemax – the government's evidence, Systemax engaged counsel.  You're going to hear about that to some degree because restitution is going to be sought for that. But counsel for Systemax, and Systemax through its counsel and through its engagement of forensic accounting services, did assist the United States in great measure. Systemax collected documents, Systemax responded to questions of my colleagues and my predecessors on this matter, as well as myself and AUSA Whitman Knapp. Systemax expended great resources to try to get to the bottom of this. What portion of those resources the court may ultimately determine are – should be encompassed within a restitution order, that will be for the court to decide. But I would like to say at the outset that our investigation, the criminal investigation, was greatly aided by the resource expenditure of Systemax, and I think the record should reflect that and the court should know that.

April 29, 2015 Hearing Transcript ("H'rg Trans."), at 7:18-8:11 (all cited excerpts attached as Exhibit **A**).

Systemax incurred the following expenses resulting from its internal investigation into the criminal wrongdoing of Defendants and its participation in the Government's investigation and prosecution of the Defendants' wrongful conduct:

a)      Legal fees to Katten Muchin Rosenman LLP in the amount of $558,000 for its representation of Systemax's independent audit committee of the board of directors during the post-whistleblower 2011 investigation into the Defendants' wrongdoing.

b)      Legal fees to Kramer Levin Naftalis & Frank LLP in the amount of $349,500 for its representation of Systemax during the post-whistleblower 2011 investigation into Defendants' wrongdoing, and during the 2011 SEC investigation into Gilbert Fiorentino's wrongdoing.

c)      Legal fees to Akerman LLP in the amount of $1,232,900 for its representation of Systemax during the post-whistleblower 2011 investigation into Defendants' wrongdoing, Systemax's efforts to assist the Government's prosecution of Defendants, Systemax's requests for restitution and participation as a victim in these criminal actions, and Systemax's claim with Travelers Insurance on its crime loss policy in connection with Defendants' wrongdoing.

d)      Costs totaling $529,300 that were incurred with e-discovery vendors Credence Corporation, Rational Enterprise and Xact Data. These vendors assisted Systemax's law firms noted above with the 2011 investigation into the Defendants' wrongdoing, and the 2011 SEC investigation into Gilbert Fiorentino's wrongdoing by helping to collect, process, and facilitate review of electronically stored documents.  The vendors also gathered information to assist with calculating Systemax's losses for restitution and responding to the Government's requests for information pertaining to the criminal actions against the Fiorentinos.

e)      Fees of $697,900 to Berkowitz Pollack Brant, an accounting firm hired by Systemax to analyze and calculate the losses attributable to Defendants' misconduct.  Daniel

Hughes of Berkowitz Pollack Brant testified at the sentencing hearing as a Government witness in support of the loss amount, as well as testifying at the restitution hearing before Judge Martinez.  Moreover, Systemax intends to call Mr. Hughes at the continued restitution hearing to establish the appropriate measurement of prejudgment interest.

Systemax has provided Defendants with copies of the various invoices that support its initial request for these fees and costs in the amount of $3,367,600.  Systemax conducted a thorough, line-by-line review of the invoices and removed from its request all non-restitutable time entries.  For example, Systemax removed all fees that were incurred in connection with the various civil lawsuits filed by Systemax, even though such lawsuits were filed as a direct result of Defendants' wrongdoing in an attempt by Systemax to recover losses resulting from Defendants' criminal conduct.  Although not required to, Systemax also removed from its request the fees incurred in defending Carl Fiorentino's baseless claims in state court against TigerDirect, Inc. for defamation and abuse of process, in which he alleged that Systemax made false statements about the very actions which he subsequently admitted in his Plea Agreement. In the case of any fee entry that included both recoverable and excluded tasks, Systemax removed the entire entry from its restitution request.

**B.      The Parties and Systemax Stipulate to a $3,060,800 Fees Award Against Defendants, Jointly and Severally.**

As set forth in the Status Report, the parties and Systemax agree to restitution for the category of fees and costs in the amount of $3,060,800, "which amount shall be joint and several among the [D]efendants."  *See id.* at 4.  The law supports the imposition of joint and several liability for this harm to Systemax, as the Defendants were both participants in the conspiracies and schemes resulting in Systemax's losses.  *See Huff*, 609 F.3d at 1243-44; *U.S. v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002) (affirming district court's decision to hold defendants jointly and

severally liable for restitution payments where they both played an essential role in the fraudulent scheme); *U.S. v. Adeniji*, 221 F.3d 1020, 1029 (7th Cir. 1999) ("Congress has specifically authorized joint and several liability for restitution in cases involving joint criminal endeavors, *see* 18 U.S.C. § 3664(h)."); *U.S. v. Church*, 731 F.3d 530, 537 (6th Cir. 2013) ("[A]ll that was necessary to 'hold both Defendants fully liable for the restitution amount' was evidence that they both contributed to [the victim's] injuries in some way.").   The conspiracy and kickback schemes underlying Defendants' offenses of conviction all involved the direct receipt of undisclosed bribes and kickbacks from Systemax's vendors in exchange for causing Systemax to overpay for the vendors' products.   Each of the Fiorentinos was knowledgeable of the other's significant acts undertaken in furtherance of these schemes.   Systemax expended great resources in uncovering these schemes, and Defendants should be held jointly and severally liable for the resulting loss.

Systemax thereby requests that the Court enter a restitution award for the category of fees and costs in the amount of $3,060,800, to be imposed jointly and severally on Carl Fiorentino and Gilbert Fiorentino, as agreed upon by the parties and Systemax.

## III.    THE COURT SHOULD AWARD AS RESTITUTION A PERCENTAGE OF THE DEFENDANTS' COMPENSATION DURING THE PERIOD OF WRONGDOING

### A.    Defendants' Compensation Is Properly Awarded to Systemax as Restitution.

Systemax also seeks restitution for fifty percent (50%) of the compensation paid to the Defendants during the years in which they were engaged in the various schemes and conspiracies underlying their offenses of conviction.   Where a criminal defendant provides dishonest services to his employer, a portion of the wrongdoer's compensation can – and should – be awarded as restitution.   *See Bahel*, 662 F. 3d at 649; *U.S. v. Sapoznik*, 161 F.3d 1117, 1121-22 (7th Cir. 1998).   Restitution is not limited to salary, but may include other components of compensation.

*See U.S. v. Crawley*, 533 F.3d 349, 359 (5th Cir. 2008) (awarding pension in addition to salary). Restitution may be imposed for acts committed outside the statute of limitations where the acts are part of the scheme or conspiracy of which the defendant is convicted. *See Dickerson*, 370 F.3d at 1342; *Brown*, 665 F.3d at 1253. Because calculating the percentage of time that a defendant spent on dishonest services is "inherently difficult to ascertain," a "reasonable estimate" is sufficient. *See U.S. v. Coffin*, No. 09-CR-481, et al., 2011 WL 4962395, at *4 (E.D.N.Y. Oct. 18, 2011); *see also Sapoznik*, 161 F.3d at 1122 (noting that the district court has discretion to award a percentage of salary "within reasonable bounds" and that a "rough approximation . . . is all that is feasible in the computation of loss in a case such as this").

Systemax placed its trust in Defendants, who were officers of TigerDirect, Inc. and therefore owed fiduciary duties to Systemax and its shareholders, to run major business operations honestly and faithfully, and in the best interests of Systemax and its shareholders. Instead, Defendants engaged in fraudulent schemes that caused significant losses to Systemax. Systemax compensated Defendants for honest services, which they failed to provide.

During the time period of the criminal wrongdoing for which the Defendants pled guilty (January 1, 2003 through April 18, 2011), Gilbert Fiorentino received total compensation from Systemax in the amount of $27,431,000 and Carl Fiorentino received total compensation from Systemax in the amount of $5,531,000. Systemax seeks only a percentage of these total compensation figures as restitution.

**B.     Fifty Percent Is a Conservative Request Considering the Extent of Defendants' Dishonest Services to Systemax's Detriment.**

In estimating the percentage of compensation to claw back from a dishonest employee, there are multiple factors to consider. The amount of time dedicated to wrongdoing, or the repetitiveness of the wrongful acts in connection with employment, should be considered in

awarding salary as restitution. *See Sapoznik*, 161 F.3d at 1121-22; *U.S. v. Skowron*, 839 F. Supp. 2d 740, 750 (S.D.N.Y. 2012). The Court also should consider the amount of bribes the Defendants' received, the amount of intended loss the schemes created, the length of time the schemes lasted, Defendants' level of seniority at the company, and the level of Defendants' participation in the schemes. *Coffin*, 2011 WL 4962395 at *4. The employee that performed dishonest services is best able to prove the value of any alleged legitimate services that he provided to the victim, and therefore "the burden should fall on him to argue for a reduction in his restitution order" with respect to compensation. *U.S. v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011).

Defendants served as high-level executives at Systemax. Gilbert Fiorentino served as the President of Systemax's North American Technology Products Group, the division that included TigerDirect, and sat on the board of directors of Systemax. Carl Fiorentino served as President of TigerDirect. As set forth above, both individuals were highly compensated by Systemax, and the company and its shareholders put enormous trust in both individuals to act honestly and in accordance with their fiduciary duties. Defendants' kickback and bribery schemes were multi-faceted, involving many different vendors, and pervaded their employment for a period of over eight years, from January 1, 2003 through April 18, 2011. During this time period, Defendants were convicted of accepting kickbacks and bribes from multiple vendors in exchange for retention of certain contracts and overcharging Systemax for products and services. Defendants also pled guilty to conspiracy charges for conduct involving stealing company merchandise. The schemes for which Defendants have been convicted, and certain of their efforts to conceal their crimes and ill-gotten gains, are detailed in their respective plea agreements. *See* Gilbert Fiorentino Plea Agreement at ¶ 18 [No. 14-20854, ECF No. 17]; Carl Fiorentino Plea Agreement

at ¶ 18 [No. 14-20025, ECF No. 66].  Systemax's estimated losses in connection with these schemes alone – Rici International, DelConte Packaging, Lynch Advisors, Glass-Tech, and Patriot Memory – total over $31,500,000.

In addition to those schemes confessed in their plea agreements, Defendants participated in many other schemes for personal gain at the expense of Systemax.  However, as is often the case with organized criminal misconduct, Systemax and the Government lack sufficient evidence to prove the losses resulting from the additional schemes, and therefore, restitution cannot be sought for all of Systemax's losses.  However, these additional schemes are evidence of the continuous nature of Defendants' misconduct while on the clock at Systemax.  As the Government stated during the April 29, 2015 restitution hearing:

> There are other kickbacks that were part of this scheme. Some of those amounts are hard to determine, because they were paid in the form of cash and so forth. The conspirators here, these two defendants working together and separately, did obtain other monies from other vendors, sometimes an envelope of cash, sometimes this, sometimes that.  We are not seeking restitution on those amounts because we just can't come before the court and say on a preponderance level we can meet our burden of requesting a finding that they, you know, should be required to pay restitution on those amounts.

H'rg Trans. at 65:19-66:3.  Indeed, in connection with its investigative efforts to assist the Government, Systemax has learned of the following additional schemes, and this list is not intended to be all-inclusive: (1) the ongoing theft by the Fiorentinos of Systemax's products from the photo studio for personal use and to distribute to friends and family, (2) a scheme by Gilbert Fiorentino to personally collect three dollars for each employee haircut from a barber that provided services to company employees at the company's premises, (3) the use of company facilities for "massage therapy" appointments in a private room at the company's headquarters, (4) Gilbert Fiorentino's theft of food from the company kitchen to take to his personal residence, (5) the wrongful billing to the company for fuel provided by vendor Shoreline Fuel to Gilbert

Fiorentino's personal boat, (6) the use of company assets to pay Claudio Antonelli, a carpenter, and Carlos Chamorro, a painter, doing work at Gilbert Fiorentino's personal residence and his daughter's apartment, (7) the Fiorentinos' personal use of Sony Style rewards points awarded to Systemax for corporate purchases, and (8) a scheme to fraudulently pay the Fiorentinos' mother through the company payroll even though she did not perform any services for Systemax. Defendants also caused Systemax to pay compensation to other employees, including Gerdy Carballos and Andrea Fongyee, for their efforts in assisting Defendants with their wrongful schemes, including the theft of company merchandise and the destruction of evidence of Defendants' wrongdoing.  However, Systemax does not seek restitution for that compensation.

Considering the number and scope of the extensive schemes, the more than eight year time period over which they were perpetrated, and the cover-up of the crimes and the significant resulting losses to Systemax, fifty percent (50%) is a conservative clawback estimate.  This is well within the Court's discretion considering the company time, effort, resources and expense that Defendants exploited to initiate, maintain, and cover up their numerous schemes to avoid detection by Systemax and the Internal Revenue Service, and considering the Fiorentinos' level of knowledge and authority at the company.  *See*, *e.g*., *Bryant*, 655 F.3d at 253-54  (awarding 100% of the salary and bonus of an employee that was part of a $2.325 million fraudulent scheme); *Sapoznik*, 161 F.3d at 1122 (affirming the award of the "arbitrary fraction" of 25% of the salary of a police officer that received bribes from organized crime, which "rather generously credits [him] with being worth to the employer three-fourths of his salary even though he was corrupt"); *Coffin*, 2011 WL 4962395 at *4 (awarding restitution of 10-25% of the total compensation of multiple employee defendants based on the court's own percentage estimates); *Skowron*, 839 F. Supp. 2d at 749-752 (awarding $6,420,801 as 20% of defendant's total

compensation from 2007-2010, where defendant was convicted of insider trading during the brief 1-2 month period from December 2007 through January 2008, and then obstructed the SEC's investigation thereafter).    Therefore, Systemax seeks fifty percent of the total compensation awarded to each of the Defendants from January 1, 2003 through April 18, 2011.

**C.** **Systemax Seeks $2,765,000 From Carl Fiorentino.**

Carl Fiorentino's total compensation from January 1, 2003 through April 18, 2011 was $5,531,000.  Systemax seeks a restitution award of half of that figure, which is $2,765,500.

**D**. **Systemax Seeks $8,215,500 From Gilbert Fiorentino.**

Gilbert Fiorentino's total compensation from January 1, 2003 through April 18, 2011 was $27,431,000.  As part of a May 2011 settlement agreement, Gilbert Fiorentino returned to Systemax certain stock, restricted stock units, stock options and a small amount of bonus money. The total value of the settlement was $11,000,000.  In awarding restitution, the Court is not required to credit Gilbert Fiorentino for his payments under the prior Settlement Agreement. *See Coffin*, 2011 WL 4962395, at *2, n.2 ("The court rejects defendants' arguments that other payments already made to [the victim], such as the settlement payments made . . ., have relieved defendants of their obligation to pay restitution of a percentage of their compensation and benefits"); *U.S. v. Savoie*, 985 F.2d 612, 619 (1st Cir. 1993) (rejecting argument that defendant's civil settlement amount should be set off against the restitution figure because "[t]he statute itself dispatches this contention").  In fact, where the purpose of the settlement is simply for the parties to avoid the burden and expense of litigation, as was the case here, then no credit shall be given for the settlement amount.  *U.S. v. Edwards*, 595 F.3d 1004 (9th Cir. 2010) (upholding the imposition of full restitution and denying any offset for compensation that defendant paid in connection with the settlement of an underlying bankruptcy dispute, because that settlement was

made to avoid the burden and expenses of litigation and was not based on a specific assessment of the victims' losses caused by the defendant's criminal offense – bankruptcy fraud). Nevertheless, Systemax has agreed to credit Gilbert Fiorentino for the $11,000,000 in connection with Systemax's request for compensation restitution.  *See* H'rg Trans. at 21:3-5 (statement by Gilbert Fiorentino's counsel that the $11 million "included a significant repayment of Gilbert's earned compensation").  A more detailed discussion of the Settlement Agreement is set forth in Section IV, below.

After crediting Gilbert Fiorentino for the returned company property, Gilbert Fiorentino's total compensation is $16,431,000.  Systemax seeks a restitution award of half of that figure due to Gilbert Fiorentino's dishonest services, which is $8,215,500.

> **E.      Systemax Intends to Present Evidence in Connection With the Compensation Clawback Request.**

In connection with its request for compensation restitution, Systemax intends to introduce payroll records (already produced to the other Parties) and call Ben White (Vice President of Internal Audit at Systemax), Lamar J. Lewis-Sutton (Internal Audit Supervisor at Systemax), Carl Fiorentino, and Gilbert Fiorentino as witnesses.  Defendants are critical witnesses for this category of restitution because they are in the best position to know the amount of time spent on their criminal wrongdoing and other fraudulent schemes.  *See Bryant*, 655 F.3d at 254.  In addition, Systemax may call Gerdy Carballos, Andrea Fongyee, Yaisel Diaz, Lonny Paul, Todd Lee, Patrick Fiorentino, Claudio Antonelli, and Alex Greber as potential fact witnesses to provide support for Systemax's request for the clawback of fifty percent of Defendants' compensation.

## IV.   GILBERT FIORENTINO'S MAY 2011 SETTLEMENT AGREEMENT DOES NOT EXEMPT HIM FROM PAYING RESTITUTION FOR HIS CRIMES

At the April 29, 2015, restitution hearing, Gilbert Fiorentino argued that <u>no</u> restitution should be awarded against him because it is barred by the May 6, 2011 Settlement Agreement with Systemax.  *See* H'rg Trans. at 22:11-23:10; *see also* Settlement Agreement and Form 8-K dated June 21, 2011, attached as Composite Exhibit **B**.  Yet, Gilbert Fiorentino's cited authority for this argument establishes that a prior private settlement agreement and release from the victim does not prevent the imposition of restitution.  *See U.S. v. Sheinbaum*, 136 F.3d 443 (5th Cir. 1998) (cited in H'rg Trans. at 24:9-13).  In *Sheinbaum*, the Fifth Circuit ruled that a victim's private agreement "in a civil proceeding that it has been compensated fully does not prevent a district court from pursuing the rehabilitative and retributive functions of the criminal law served by restitution."  *See id*. at 448.  The court rejected the precise argument that Gilbert Fiorentino raises here – *i.e*., that "because [the victim] has already been recompensed" through a civil settlement, "[defendants] should not also be required to pay restitution."  *See id*. at 447; *see also U.S. v. Rizk*, 660 F.3d 1125 (9th Cir. 2011) (upholding a $46 million restitution award payable to the victim banks, even though they had settled with the defendant in a prior civil action for $1 million that had also included a release of all claims against the defendant); *Edwards*, 595 F.3d 1004 (upholding full restitution and denying offset for the settlement of an underlying bankruptcy dispute, because that settlement was made to avoid the burden and expenses of litigation and was not based on a specific assessment of the victims' losses caused by the defendant's criminal offense).

Although recognizing the *Sheinbaum* rule, Gilbert Fiorentino makes several arguments in an attempt to avoid it.  First, he appears to request that this Court make an exception to the rule by relying on *U.S. v. Coleman*, 997 F.2d 1101 (5th Cir. 1993).  *See* H'rg Trans. at 24:23-25:17.

The *Sheinbaum* court rejected an identical request, explaining that the "*Coleman* exception" narrowly applies only to cases in which the government is actively involved in the prior settlement:

> In *Coleman,* a government agency (working in close connection with the U.S. Attorney's Office) negotiated a civil settlement with the defendant. We reasoned that in releasing the defendant from future civil liability, the government was essentially estopped from seeking further compensation in criminal litigation from the defendant. No such estoppel principle exists in this case . . . . Indeed, the *Coleman* court stressed that its holding was not meant to apply to situations like the one before us. *See Coleman,* 997 F.2d at 1107 & n. 4. . . . . [A]s *Coleman* stressed, it was the fact that the government negotiated the settlement with the defendants that created an estoppel issue.

*Sheinbaum*, 136 F.3d at 448.   The Settlement Agreement here took place before Gilbert Fiorentino was indicted and the Government played no part.   Therefore, the limited *Coleman* exception cannot apply.

Gilbert Fiorentino next argues that Systemax cannot "double collect on claims that were fully satisfied and released" as part of the Settlement Agreement.   *See* H'rg Trans. at 24:6-8. However, as discussed above, Systemax has agreed to credit the settlement as a return of compensation.   Moreover, the Settlement Agreement does not reference or admit any bad acts of Gilbert Fiorentino, such that the Court could make a determination that the $11 million was paid in connection with the same acts underlying Gilbert Fiorentino's offenses of conviction.   Nor does the Settlement Agreement specify any losses of Systemax such that the Court could determine that Systemax has already received compensation for its losses caused by Gilbert Fiorentino's crimes.   Even without a credit for the $11 million dollars, there would be no double payment by awarding restitution.

Finally, Gilbert Fiorentino argues that the Court should not impose restitution because it would be penal in nature considering that Gilbert Fiorentino has already paid $11 million to Systemax.  *See* H'rg Trans. at 24:14-20, 26:9-19.  Yet, even Gilbert Fiorentino acknowledges that restitution serves a penal purpose.  *See id*. at 25:6-17.  Systemax could not have privately contracted that penal state interest away through the Settlement Agreement.  *See Savoie*, 985 F.2d at 619 ("[T]he law will not tolerate privately negotiated end runs around the criminal justice system.").  Here, the amount sought as restitution does not exceed the amount of harm caused to Systemax by Gilbert Fiorentino.  Therefore, even if restitution may serve a penal purpose, it is only serving to recompense the victims in this action.

The Settlement Agreement payment and a restitution payment serve distinct purposes. Restitution will compensate Systemax for the harm caused by Gilbert Fiorentino's specific offenses and will satisfy the penal public interest in requiring him to pay for the harm caused by his wrongdoing.  The Settlement Agreement, however, was not intended to make Systemax whole for Gilbert Fiorentino's wrongdoing or to punish Gilbert Fiorentino.  The Settlement Agreement states that it is "not . . . an admission of either liability or wrongdoing" and instead is "solely for the purpose of avoiding the costs and inconvenience of litigation."  *See* Settlement Agreement ¶ 3; *see also Savoie*, 985 F.2d at 619 (noting that the language of a prior settlement "skirts any admission of responsibility" by the defendant and "concerns potential civil liability," and so is distinct from restitution, which "is a criminal penalty meant to have deterrent and rehabilitative effects"); *Edwards*, 595 F.3d 1004.  Gilbert Fiorentino essentially negotiated and paid settlement funds in exchange for the right to resign, instead of being terminated for cause, and to avoid civil litigation expense.  *See* Settlement Agreement ¶ 6.  Gilbert Fiorentino did not, and could not have, negotiated with Systemax to settle his restitution responsibilities.  Therefore,

the Settlement Agreement does not impact Systemax's right to an award of restitution against Gilbert Fiorentino.

## V.      CARL FIORENTINO'S CLAIM FOR A $3.3 MILLION REDUCTION IN RESTITUTION MUST BE REJECTED

At the April 29, 2015 restitution hearing, Carl Fiorentino argued for a $3.3 million reduction in the restitution awarded against him.  He claimed entitlement to a $1.4 million credit for stock options that the company allegedly refused to let him exercise following his termination for cause in April 2011, and a $1.9 million credit for the sale proceeds of his Gables Estates home, which was forfeited to the United States and remains in the possession of the United States.  *See* H'rg Trans. at 36:3-10.  Neither of these amounts should reduce Carl Fiorentino's restitution judgment.

### A.      Carl Fiorentino Is Not Entitled to a $1.9 Million Credit For Home Sale Proceeds at This Time.

As to the $1.9 million in sale proceeds from Carl Fiorentino's home, those funds were forfeited and are currently in the Government's possession.  As the Government explained at the April 29, 2015 restitution hearing, the forfeiture of those funds should not affect the restitution ordered against Carl Fiorentino.  *See* H'rg Trans. at 67:10-68:1.  After the Court issues an Amended Judgment against Carl Fiorentino that includes the final restitution award, Systemax will be entitled to seek recovery of forfeited funds, including the $1.9 million, toward satisfaction of that judgment.  *See id.*  So, while Carl Fiorentino likely will receive a credit for the $1.9 million sale proceeds in the future, that cannot occur until after the funds are paid over to Systemax.  Any offset at this time would be premature and would be subject to double counting once the funds are transferred from the Government to the victim.

### B.      Carl Fiorentino Is Not Entitled to a $1.4 Million Credit For Stock Options.

Carl Fiorentino also claims that he should be entitled to a $1.4 million dollar credit for

certain stock options that Systemax revoked upon his termination. *See* H'rg Trans. at 36:3-10. As an initial matter, the stock options at issue are not included in Systemax's total $2,765,500 compensation figure for Carl Fiorentino. He is already effectively receiving a credit for these stock options in connection with Systemax's request for compensation restitution. Therefore, even if the options were wrongfully revoked as claimed by Carl Fiorentino – an issue that he is currently litigating in Miami-Dade Circuit Court – that does not impact the compensation that Systemax seeks as restitution due to Carl Fiorentino's dishonest services.

As noted, this issue is squarely before Judge John Thornton in state court in the action styled *Systemax v. Fiorentino*, et al., No. 12-00519 CA 40 (Fla. 11th Jud'l Cir.) (the "State Court Action"). Carl Fiorentino brought a counterclaim in the State Court Action that remains pending. While Systemax disputes Carl Fiorentino's entitlement to the cancelled stock options, if Carl Fiorentino succeeds on his claim, then he will obtain a judgment in the amount of any damages he can establish he suffered. In fact, this precise issue has been briefed on summary judgment by Carl Fiorentino and remains pending before Judge Thornton. Because Carl Fiorentino has placed this issue squarely in front of Judge Thornton via a breach of contract counterclaim, it should not be adjudicated in this proceeding and it would be premature to apply a credit.

Nevertheless, Systemax will provide a brief factual background for the Court. Systemax terminated Carl Fiorentino for cause on April 18, 2011, after the initial discovery of certain of the multiple schemes for which he has now been convicted. Because his employment was terminated for cause, Systemax subsequently terminated certain of Carl Fiorentino's unexercised stock options pursuant to the governing 1995 Long-Term Stock Incentive Plan, as amended by Resolution of the Board of Directors on May 9, 2011 (the "Stock Plan"). This cancellation is consistent with the disloyal servant doctrine, pursuant to which an employee who breaches his

duty of loyalty to his employer forfeits the right to claim compensation, even if already earned. *See Hampshire Grp., Ltd. v. Kuttner*, C.A. No. 3607-VCS, 2010 WL 2739995, at *41 n. 342 (Del. Ch. July 12, 2010) (recognizing case law "holding that an employee's breach of his duty of loyalty works a forfeiture of the employee's right to claim any compensation under both statutory and common law theories."); *Quinn v. Phipps*, 113 So. 419 (Fla. 1927) (determining that a real estate broker was not entitled to compensation where he had breached his duty of loyalty to his principal); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300-301 (2d Cir. 2006).

Systemax originally had granted the stock options at issue to Carl Fiorentino on May 31, 2002 (45,833 stock options at an exercise price of $3.05 per share), May 3, 2004 (75,000 stock options at an exercise price of $5.30 per share), and June 7, 2007 (40,000 stock options at an exercise price of $19.39 per share).  In seeking a $1.4 million credit, Carl Fiorentino apparently seeks a credit for the collective exercise price of these options ($1,312,890).  However, that it not an accurate valuation.

At the time of his termination on April 18, 2011, Carl Fiorentino's June 7, 2007 stock options were not "in the money," meaning that they were worthless because he would have paid more to exercise his options to obtain the stock ($19.39) than the price at which the stock traded at that time ($12.80).  In fact, the exercise price of $19.39 was greater not only than the market price at that time, but also Systemax's 52-week high of $16.43.  In his counterclaim in the State Court Action, Carl Fiorentino admits that he only ever attempted to exercise the stock options that were "in the money."  Therefore, the value of the June 7, 2007 stock options was zero, and Carl Fiorentino could not be not entitled to any "credit" for the alleged loss of those options after his termination for cause.

That leaves the May 31, 2002 and May 3, 2004 options, which were "in the money" at the time of Carl Fiorentino's termination.  To value those options, one must consider the spread between the trading price at the time that Carl Fiorentino claims he sought to exercise them – *i.e.*, immediately upon his termination for cause – and the exercise price for the options.  On April 18, 2011, Carl Fiorentino could have exercised his 2002 stock options for $139,790.65 (45,833 shares x $3.05 per share), and resold them on the open market for $572,454.17 (45,833 shares x $12.49 per share), for a resulting value of $432,663.52.  As for the 2004 options, on April 18, 2011, Carl Fiorentino could have exercised them for $397,500 (75,000 shares x $5.30 per share), and then resold them on the open market for $936,750 (75,000 shares x $12.49 per share), for a resulting value of $539,250.  Therefore, the "in the money" options had a combined value of $971,913.52.

Therefore, even if this issue of stock options properly was before this Court – and, it is not – Carl Fiorentino would not be entitled to the $1.4 million setoff that he claims in connection with restitution.  First, the stock value is not included in Systemax's compensation clawback request.  Second, Carl Fiorentino was never entitled to the options because they were revoked upon his termination for cause.  Third, this issue is being adjudicated in the State Court Action.  Fourth, and finally, any claim to a setoff could not exceed $971,913.52, the value of the stock options that were "in the money."

## VI.   THE PARTIES AND SYSTEMAX AGREE THAT PREJUDGMENT INTEREST SHOULD BE AWARDED ON EACH OF THE CATEGORIES OF RESTITUTION

The parties and Systemax have stipulated that Systemax is entitled to prejudgment interest on each category of loss that is awarded by the Court, including compensation, if awarded, and fees and costs.  *See* Status Report at 4-5.  The Mandatory Victims Restitution Act allows a sentencing court to award prejudgment interest in a criminal restitution order to ensure

compensation "in the full amount of each victim's losses." *See Qurashi*, 634 F.3d 699, 704 (2d Cir. 2011) (citing 18 U.S.C. § 3664(f)(1)(A) and authority from various other circuit courts); *accord Huff*, 609 F.3d at 1248, n.4 ("[R]estitution may include prejudgment interest."). For all losses, prejudgment interest is a fair approximation to account "for the time-value of money" and "the deprivation of the victim's ability to put its money to productive use." *U.S. v. Qurashi*, 634 F.3d at 703. An award of interest should be added to each loss category to satisfy the "'primary and overarching' goal of the MVRA," which is "to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *See id.* "The time frame for the imposition of prejudgment interest usually begins with the date of the unlawful gain and ends at the entry of judgment," but alternative starting dates may be used where the precise date of loss cannot be determined. *See S.E.C. v. GMC Holding Corp.*, No. 6:08–cv–275–Orl–28KRS, 2009 WL 506872, at *6 (M.D. Fla. Feb. 27, 2009). District courts have broad discretion in fashioning an award of prejudgment interest considering fairness and equity. *See In re Int'l Admin. Servs., Inc.*, 408 F. 3d 689, 710 (11th Cir. 2005).

The parties and Systemax have further agreed to use Systemax's methodology in calculating prejudgment interest. *See* Status Report at 4-5. Therefore, interest will be calculated using the United States Treasury bill rate. *See U.S. v. Gordon*, 393 F.3d 1044, 1058 n. 12 (9th Cir. 2004) (citing 28 U.S.C. § 1961); *In re Int'l Admin. Servs., Inc.*, 408 F. 3d at 710; 28 U.S.C. § 1961(b) ("Interest awarded under 28 U.S.C. § 1961 is compounded annually."). Because the losses incurred as a result of the kickback schemes were continuous in nature and occurred each and every time a product was purchased from the vendor, it would be nearly impossible to calculate them on a per-day, per-loss basis. Therefore, the parties and Systemax have agreed to

calculate interest on each loss category by totaling all losses incurred in a category during a given calendar year, and then running interest for that calendar year's total loss starting on January 1 of the <u>next</u> calendar year.  This ensures that interest only accrues during the pre-judgment period beginning <u>after</u> the expense was paid by Systemax.  With the assistance of its accounting experts, Systemax has calculated the prejudgment interest for each category of loss, on a year-by-year basis, and has applied the rate equal to the first weekly average one-year constant maturity Treasury yield for the following year, as published by the Board of Governors of the Federal Reserve System.  *See* 28 USC § 1961(b).  For each year's total loss, the selected rate was held constant through the date of the April 29, 2015 restitution hearing and interest was compounded annually.  *See id.*

Following this methodology, and as demonstrated in the analysis of Systemax's accounting experts attached hereto as Exhibit **C**, for the restitution category of fees and costs, Systemax is entitled to an award of prejudgment interest against Carl Fiorentino and Gilbert Fiorentino, jointly and severally, in the amount of $8,612.  For the compensation category, Systemax is entitled to an award of $1,764,499 in prejudgment interest against Gilbert Fiorentino, and an award of $475,494 in prejudgment interest against Carl Fiorentino.  With respect to the loss categories pending before Judge Martinez, the parties and Systemax agree to use the same methodology to calculate interest after final loss amounts have been established by the Court.  The parties and Systemax further agree that the interest obligation on a particular loss category will be joint and several only if the underlying restitution loss is ordered to be joint and several.  *See* Status Report at 5.

## CONCLUSION

For all the reasons set forth above, Systemax respectfully requests: (1) for fees and costs, an award of restitution against Gilbert Fiorentino and Carl Fiorentino, jointly and severally, in the amount of $3,069,412 ($3,060,800 in fees and costs + $8,612 in prejudgment interest); (2) for clawback of compensation, an award of restitution against Gilbert Fiorentino in the amount of $9,979,999 ($8,215,500 in compensation + $1,764,499 in prejudgment interest) and against Carl Fiorentino in the amount of $3,240,994 ($2,765,500 in compensation + $475,494 in prejudgment interest); and (3) a ruling that Systemax's methodology for the calculation of prejudgment interest explained above shall be applied to all other loss categories included in the final restitution award entered by the Court.

Respectfully submitted,

Date:  June 12, 2015

**AKERMAN LLP**
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Telephone:  (305) 374-5600
Facsimile:  (305) 374-5095

By: /s/ Ryan Roman
    MICHAEL C. MARSH
    Florida Bar No. 0072796
    Primary e-mail: michael.marsh@akerman.com
    Secondary e-mail: sharon.luesang@akerman.com
    RYAN ROMAN
    Florida Bar No. 025509
    Primary e-mail: ryan.roman@akerman.com
    Secondary e-mail: dorothy.matheis@akerman.com

    *Attorneys for Systemax Inc. and TigerDirect, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 12, 2015, the foregoing document was electronically

filed with the Clerk of the court using CM/ECF, which shall send notice to individuals listed on

the service list below.

James H. Knapp, Esq.
U.S. Department of Justice
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
E-mail: demetri.jones@usdoj.gov
E-mail: james.knapp@usdoj.gov

Jerrob Duffy, Esq.
United States Attorney's Office
99 N.E. Fourth Street
4th Floor
Miami, FL 33132
E-mail: jerrob.duffy@usdoj.gov

*Attorneys for United States of America*

Sylvia B. Pinera-Vazquez, Esq.
Pinera-Vazquez Law Firm
CCM International Center
1900 SW 3rd Avenue
Miami, FL 33120
E-mail:spinera@aol.com

David Michael Garvin, Esq.
David M. Garvin P.A.
200 S. Biscayne Boulevard
Suite 3150
Miami, FL 33131
E-mail: ontrial2@gmail.com

*Attorneys for Carl Fiorentino*

Samuel J. Rabin, Jr.
Samuel J. Rubin, Jr., P.A.
800 Brickell Avenue
Suite 1400
Miami, FL 33131
Email: sjr@miamilawyer.com

*Attorneys for Gilbert Fiorentino*


/s/ Ryan Roman
Ryan Roman